UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRY L. JOHNSON,

                                        **Decision and Order**
                Petitioner,             **No. 09-CV-0127**

        -VS-

JAMES T. CONWAY,

                        Respondent.
_____

I.    **Introduction**

        *Pro se* petitioner Jerry L. Johnson ("Petitioner") has filed

a timely petition for a writ of habeas corpus under 28 U.S.C.

§ 2254 challenging the constitutionality of his custody pursuant

to a judgment entered August 29, 2005, in New York State, Supreme

Court, Erie County, convicting him, after a jury trial, of murder

in the second degree (N.Y. Penal Law ("P.L.") § 125.25[1]), and

of criminal possession of a weapon in the third degree (P.L.

§ 265.02[1]).

II.   **Factual Background and Procedural History**

      A.    **Trial, Verdict, and Sentence**

        Petitioner's conviction stems from an incident that occurred

on August 21, 2004, wherein petitioner stabbed his mother,

Ernestine Brown ("Brown" or "the victim") in her apartment

following an argument, causing her death. Before succumbing to

1

her injuries, Brown informed police that "her son" had stabbed her, and provided Petitioner's name, age, complexion, address, and the clothing he was wearing, which included brown pants, sandals, and a red sweatshirt. Trial Tr. ("T.T.") 523-528.

Using the address and descriptive information supplied by the victim regarding her son, police detectives went to Petitioner's home to question him regarding the assault. T.T. 599. At approximately 11:20p.m., detectives knocked on Petitioner's door, which he opened dressed only in a towel. He answered affirmatively when asked whether he was "Jerry Johnson." T.T. 602; Suppression Hr'g Mins. ("S.H.") 44. Petitioner was then asked whether he would like to appropriately dress himself, to which he agreed, specifically requesting a pair of red pants and red shoes located in his living room. T.T. 605. While detectives assisted Petitioner in locating these garments, they observed in plain view a red sweatshirt, an item known to match part of the description of the attire worn by Brown's assailant. T.T. 606. Petitioner made no objection when asked whether detectives could collect the red sweatshirt. T.T. 606. Before leaving the premises, Petitioner was permitted to collect medication that he was then taking. T.T. 607. At no point did detectives suspect that Petitioner was inebriated. T.T. 608.

Petitioner was subsequently taken into custody and escorted to Buffalo police headquarters for questioning. T.T. 623. Petitioner waived his <u>Miranda</u> rights, and informed police that earlier in the day he had visited with his mother, and that during the course of that visit he had stabbed her following a heated argument between the two. T.T. 629.

Under Indictment No. 01890-2004 Petitioner was charged with two (2) counts of murder in the second degree, and one (1) count of criminal possession of a weapon in the third degree.

On January 12, 2005, a <u>Huntley</u> hearing was held.[1] At the close of that hearing, the trial court denied Petitioner's motion to suppress inculpatory statements made to police following his arrest. <u>Huntley</u> Hr'g Mins. ("H.H.") 26. A second suppression hearing was held on May 25, 2005, wherein the court denied Petitioner's motion to have the red sweatshirt removed from his living room suppressed. S.H. 47.

Petitioner's jury trial commenced on May 26, 2005, before Judge Michael L. D'Amico. At the conclusion of the trial, the jury found Petitioner guilty of one (1) count of murder in the second degree, and one (1) count of criminal possession of a weapon in the third degree. T.T. 918. Petitioner was sentenced to

---

[1]    <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965) (trial court must conduct pre-trial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

an indeterminate term of incarceration of twenty five (25) years to life for the murder conviction, and to a concurrent term of two and one-third (2⅓) years to seven (7) years for the weapons conviction. Sentencing Tr. ("S.") 3-4.

## B.  Direct Appeal

Through counsel, Petitioner filed a brief to the Appellate Division, Fourth Department, containing the following issues: (1) the proof was insufficient as matter of law to sustain the conviction, or in the alternative, the conviction is against the weight of the credible evidence; (2) Petitioner's rights under the Fourteenth Amendment were violated by the trial court's denial of his <u>Batson</u> challenge; (3) evidence gathered by police should have been suppressed as fruit of unconstitutional police conduct and compulsion; (4) Petitioner was denied his Sixth Amendment right to effective assistance counsel at trial[2]; and (5) Petitioner's sentence was harsh and excessive. <u>See</u> Pet'r Appellate Br.  Petitioner also filed a *pro se* supplemental brief wherein he raised seven additional issues. On September 28, 2007, the Appellate Division unanimously affirmed the judgment of

---

[2]     Petitioner's claim of ineffective assistance of counsel was premised on the following grounds: (1) counsel failed to make objections in order to properly preserve the record; (2) counsel failed to request a lesser offense charge; (3) counsel's <u>Batson</u> challenge was inarticulate and failed to preserve the issue for review; and (4) counsel failed to challenge the plain view ruling regarding the red sweatshirt during the suppression hearing. Pet'r Appellate Br. at 36-39.

conviction. <u>People v. Johnson</u>, 43 A.d.3d 1422 (4th Dept. 2007), <u>lv. denied</u> 9 N.Y.3d 1035.

### *C.* **Application for Writ of *Error Coram Nobis***

On June 23, 2009, Petitioner filed an application for writ of *error coram nobis* with the Appellate Division, Fourth Department, alleging ineffective assistance of appellate counsel. That application was denied on December 30, 2009. <u>People v. Johnson</u>, 68 A.D.3d 1823 (4th Dept. 2009). On March 16, 2010, Petitioner submitted a motion seeking to have his *coram nobis* application reconsidered with the Appellate Division, arguing that the original denial of his writ constituted a denial of his Fifth and Sixth Amendment rights. That motion was likewise denied on April 30, 2010. <u>People v. Johnson</u>, 72 A.D.3d 1657 (4th Dept. 2010). Petitioner did not, however, challenge the denial of his original application by seeking leave to appeal to the New York Court of Appeals.

### D. **Habeas Proceedings**

Petitioner filed a timely petition for habeas corpus with this Court on January 20, 2009 (Dkt. #1). In his *pro se* petition, Petitioner sought relief on the following grounds: (1) evidence was insufficient as a matter of law to sustain Petitioner's conviction of murder in the second degree, or, in the alternative, Petitioner's conviction is against the weight of the

credible evidence; (2) a _Batson_ violation constituting a violation of Petitioner's equal protection rights under the Fourteenth Amendment; (3) a Fourth Amendment violation stemming from unconstitutional police conduct performed without Petitioner's consent; (4) ineffective assistance of counsel at trial; and (5) his sentence was harsh and excessive. Petition ("Pet.") ¶ 12 & Attach.

On March 18, 2010, prior to the respondent's answer, this Court permitted Petitioner to amend his petition pursuant to Fed.R.Civ.P. 15. (Dkt. #14). Petitioner's amended petition ("Am. Pet.") offers various grounds in support of what appear to be claims of ineffective assistance of trial and appellate counsel. Am. Pet. 2-4.

For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the action is dismissed.

**III. Discussion**

   **A.    General Principles Applicable to Federal Habeas Review**

      **1.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was adjudicated on the merits in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law

question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## 2.   Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (1) reliance on pertinent federal cases employing constitutional analysis, (2) reliance on state cases employing constitutional analysis in like fact situations, (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (4) allegation of a pattern of fact that is well within the mainstream of constitutional litigation. Id. at 194.

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if

it is clear that the state court would hold the claim procedurally barred.'" <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991) (quoting <u>Harris v. Reed</u>, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." <u>Id.</u>

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see</u> <u>also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333, 277-78 (1992).

### 3. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an

"independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris v. Reed, 489 U.S. 255, 262 (1989) (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

    B.   Original Petition

        1.   Legally Insufficient Evidence

Petitioner contends, as he did on direct appeal, that the evidence of his intoxication negated the required element of

intent to kill, and, as such, the prosecution failed to establish that Petitioner formed the requisite intent for second-degree murder.  Pet., Attach. #2.  The Fourth Department held that Petitioner "made only a general motion to dismiss and thus failed to preserve his contention for our review," and, in any event, the evidence was legally sufficient to support the conviction. People v. Johnson, 43 A.D.3d 1422 (4th Dept. 2007) (citing People v Gray, 86 N.Y.2d 10, 19 (1995) ((holding that a party seeking to challenge the sufficiency of the evidence must contemporaneously object by making a trial order of dismissal and must "specifically direct[ ]" his argument at the alleged error to preserve the claim for appellate review)).

Despite the Appellate Division's alternative ruling on the merits, see Harris, 489 U.S. at 264 n.10, the lower court explicitly relied on a state procedural rule to reject Petitioner's legal insufficiency argument. See C.P.L. § 470.05(2) (codifying New York's contemporaneous objection rule).  That claim, therefore, is precluded from habeas review pursuant to the adequate and independent state ground doctrine.  See, e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) (recognizing New York's "contemporaneous objection" rule as an adequate and independent state ground barring habeas review); see also Fore v. Ercole, 594 F.Supp.2d 281 (E.D.N.Y. 2009) (finding

appellate court's determination that petitioner failed to preserve his sufficiency challenge by making only a general motion to dismiss was an adequate and independent state ground); Walker v. Goord, 427 F.Supp.2d 272 (W.D.N.Y. 2006) (appellate court's rejection of legal insufficiency claim based on New York's contemporaneous objection rule was an adequate and independent state ground barring habeas review).

The Court may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Petitioner has not attempted to make the factual showing of "actual innocence" required to qualify for the "fundamental miscarriage of justice" exception. While he does not specifically allege cause and prejudice to overcome the procedural bar, he does raise an independent claim of ineffective assistance of counsel based upon his attorney's failure to preserve the issue of legal sufficiency. See Pet., Attach. #5. Ineffective assistance of counsel may constitute cause for a petitioner's

failure to pursue a constitutional claim, e.g., Edwards v. Carpenter, 529 U.S. 446 (2000), but in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. Id. (stating that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" (emphasis in original)). Here, Petitioner's underlying contention that his attorney was ineffective is without merit. See infra Point III.B.4.a. Because Petitioner does not show that his trial attorney was constitutionally ineffective, he consequently cannot establish "cause" to excuse the procedural default. See Zayas v. Ercole, 2009 WL 6338395, *12 (E.D.N.Y. Nov. 9, 2009)("Since petitioner's trial counsel's performance was, in the aggregate, reasonable . . . petitioner cannot establish cause for his failure to preserve the claim."). This claim, therefore, must be dismissed as procedurally barred.

Alternatively, Petitioner argues that his "conviction is against the weight of the credible evidence." Pet., Attach. #2. It is well-settled, however, that a claim that a verdict is against the weight of the evidence is not cognizable on federal habeas review. E.g., Young v. Abrams, 698 F.2d 131, 135 (2d Cir.1983); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of

evidence ..."), <u>aff'd</u>, 263 U.S. 255 (1923). Therefore, it must be dismissed.

### 2.  **<u>Batson</u> Violation**

Petitioner next contends that the trial court violated Petitioner's right to equal protection under the Fourteenth Amendment when it denied Petitioner's <u>Batson</u> challenge.[3] Specifically, Petitioner contends that the prosecutor's peremptory challenges as to two Africa-American women were "racially motivated." Pet., Attach. #3. The Appellate Division held that "County Court did not err in denying his <u>Batson</u> challenge. The court properly determined that the prosecutor's explanations for exercising peremptory challenges with respect to two prospective jurors were race-neutral, and defendant failed to meet his ultimate burden of showing that those explanations were pretextual." <u>Johnson</u>, 43 A.D.3d at 1422-23 (citations omitted).

In <u>Batson v. Kentucky</u>, the Supreme Court set forth a three-part burden-shifting analysis to determine whether the use of a peremptory challenge constitutes discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. First, a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise

---

[3]       <u>See</u> <u>Batson v. Kentucky</u>, 476 U.S. 79 (1966) (a prosecutor's use of peremptory challenges to exclude jurors based solely on their race violates the Equal Protection Clause of the Fourteenth Amendment).

to an inference that the prospective juror was struck because of his or her race. 476 U.S. at 84; <u>accord</u> <u>Galarza v. Keane</u>, 252 F .3d 630, 636 (2d Cir. 2001). Second, if the trial court finds that the party making the <u>Batson</u> challenge has established a *prima facie* case, it must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. <u>Id.</u> Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving by a preponderance of the evidence that the strike was "motivated by purposeful discrimination." <u>Id.</u> Where, as here, an explanation is given for the contested challenge and the trial judge rules on the ultimate issue of intentional discrimination, the preliminary issue of whether the moving party made a *prima facie* showing becomes moot. <u>Hernandez v. New York</u>, 500 U.S. 352, 359 (1991); <u>accord</u> <u>United States v. Franklyn</u>, 157 F.3d 90, 97 (2d Cir. 1998).

According to Petitioner, the prosecutor used peremptory challenges to excuse two African-American women, both on the third panel of sixteen potential jurors, at a point where no Africa-American jurors had been selected from the first two panels. Pet. Attach. #3.

During jury selection, Juror No. 11 informed the trial court that she had "a brother that's a criminal," and an "addict" that

16

had a "career of shoplifting." Jury Selection Tr. ("J.S.") 286-287. The prosecutor challenged the juror, to which Petitioner's counsel raised a <u>Batson</u> challenge. The prosecutor then explained that Juror No. 11 was excused because her brother had been "consistently prosecuted by [his] office for 40 years. . . . I have done this with every single juror who has had this background whether they are white or black and I am willing to put on the record every single person I have excused in that regard." J.S. 357-358. The court found that the prosecutor had provided a race-neutral reason and denied counsel's <u>Batson</u> challenge. J.S. 358. Similarly, the prosecutor removed Juror No. 4 because her son was, at the time, being prosecuted for rape by his office and because she failed to disclose her mother's history of substance abuse and criminal convictions in Erie County. J.S. 352-353. Finally, the prosecutor placed on the record that he exercised a peremptory challenge to Juror No. 12, a Caucasian American woman, because her father had also been convicted of a crime and prosecuted by his office. J.S. 358. Here, the prosecutor articulated a legitimate explanation for his decision to excuse the two prospective jurors. <u>See</u> <u>Green v. Travis</u>, 414 F.3d at 300-01 (2d Cir. 2005) (accepting as a satisfactory race-neutral reason for peremptory strike the prosecutor's explanation that the prospective jurors had

relatives who had been convicted of drug offenses; stating that such a reason "relied on the types of evidence that this Court has approved in support of establishing the racial neutrality of a peremptory challenge"); see also Copeland v. Walker, 258 F.Supp.2d 105, 126 (E.D.N.Y. 2003) (finding that record showed "plausible, race-neutral reasons for the exercise of peremptory challenges" where one excused black jury had a "close" cousin who had previously been convicted of multiple murders).

A trial judge has broad discretion in determining whether the prosecution's stated reasons for exercising a peremptory challenge are legitimate or pretextual. See Miller-El v. Cockrell, 537 U.S. 322, 339 (2003). Deference in this context is particularly appropriate because a determination of pretext will often hinge on the trial judge's observation of the challenged juror, the overall *voir dire* proceedings, and the prosecutor's credibility-criteria that are exceptionally difficult to review on a written transcript of *voir dire* questioning. See id. Here, the trial court was well within its discretion in accepting the prosecutor's reasons, which were supported by the transcript. Accordingly, the Court cannot find that Petitioner has sustained his burden of proving that the prosecutor's reasons for dismissing Juror Nos. 4 and 11 were racially motivated, and the Appellate Division therefore did not unreasonably apply clearly

established Supreme Court precedent in affirming Petitioner's conviction with respect to his <u>Batson</u> claim.

### 3. Fourth Amendment Violation

Petitioner argues that the sweatshirt recovered from Petitioner's home should have been suppressed because Petitioner's consent was involuntary. Pet., Attach. #4. The respondent has correctly argued that Petitioner's claim based on an alleged violation of his Fourth Amendment rights is precluded by the doctrine announced in <u>Stone v. Powell</u>, 428 U.S. 465 (1976): "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82; <u>accord</u> <u>Graham v. Costello</u>, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.... [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair

19

opportunity to litigate the claim [.]"). Accordingly, Fourth Amendment claims may not be reviewed by a habeas court, except under two narrow exceptions: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)(*en banc*)). Neither of these exceptions applies in this case.

First, Petitioner cannot contend that New York failed to provide a corrective procedure to redress his alleged fourth amendment claim. Indeed, as the Second Circuit has noted, "the 'federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 et seq. ...., as being facially adequate.'" Capellan, 975 F.2d at 70 n.1 (quoting Holmes v. Scully, 706 F.Supp. 195, 201 (E.D.N.Y. 1989) and citing Gates, 568 F.2d at 837 & n.4; Shaw v. Scully, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)); see also Taylor v. Kuhlmann, 36 F.Supp.2d 534, 549 (E.D.N.Y. 1999) (citations omitted).

Petitioner was afforded a pretrial suppression hearing, at which his Fourth Amendment claims were addressed and litigated. S.H. 1-47. The court stated on the record its conclusions of law and findings of fact before denying Petitioner's motion. S.H. 43-47. Petitioner's appellate counsel raised the issues again in a thorough, 12-page argument in Petitioner's brief to the Appellate Division, which likewise denied his Fourth Amendment challenge. Johnson, 43 A.D.3d at 1423. Petitioner availed himself of New York's procedure, and he has not alleged that there was any breakdown in the process afforded to him. Thus, his Fourth Amendment claim is not reviewable by a federal habeas court, and this claim must be dismissed.

#### 4. Ineffective Assistance of Counsel

In his original petition for habeas corpus, Petitioner attacks his trial counsel's effectiveness on various grounds. Pet., Attach. #5. The Appellate Division rejected these contentions on the merits.[4] Johnson, 43 A.D.3d at 1423.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense.

---

[4] Petitioner raises additional, unexhausted claims of ineffective assistance of trial counsel in his amended petition. Those claims are discussed below at Part III.C.1.

Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

### a. Failure to Preserve Legal Insufficiency Claim

Here, Petitioner cannot meet either prong of the Strickland test regarding his attorney's failure to properly preserve the issue of legal sufficiency. On the issue of legal sufficiency, the Appellate Division alternatively held that, "the evidence, viewed in the light most favorable to the prosecution . . . is legally sufficient to support the conviction." Johnson, 43 A.D.3d at 1422 (citations omitted). As underscored by the appellate

court's opinion, it is highly unlikely that a trial order of
dismissal on that ground would have been granted, and counsel
cannot be faulted for failing to make a meritless argument. See
U.S. v. Arena, 180 F.3d 380, 396 (2d Cir. 1999); Ocampo v. U.S.,
No. 99-CV-6727 (JG), 2004 WL 611959, *11 ("The decision not to
pursue a meritless motion does not constitute ineffective
assistance of counsel.") (E.D.N.Y. March 22, 2004).

Moreover, there was substantial proof of Petitioner's guilt:
he confessed to stabbing his mother, and, prior to his mother
succumbing to her injuries, she told police that her son was
responsible for the stabbing. From the upstairs apartment, a
neighbor could hear Petitioner yelling and called 911. When she
looked out the window, she observed Petitioner running away.
Because it is implausible that such a motion would have been
successful, there is no reasonable probability that the outcome
of Petitioner's trial would have been different. Strickland, 466
U.S. at 694.

### b.   Failure to Request Lesser-Included Offenses

Next, Petitioner complains that counsel should have
requested submission of lesser-included offenses for the jury's
consideration.

Under New York law, in order to be entitled to a charge on a
lesser included offense, a defendant must not only show that it

is theoretically impossible to commit the greater crime without committing the lesser, he must also establish that there is a reasonable view of the evidence that would permit the jury to conclude that the defendant committed the lesser but not the greater offense. People v. Green, 56 N.Y.2d 427, 432 (1982). Under C.P.L. § 300.50, if there is no "reasonable view of the evidence" which would support such a finding, the court may not submit such lesser offense.

Even if it would have been proper as a matter of state law for the trial court to charge a lesser included offense, "the failure of petitioner's counsel to [request it to] do so in this case amounted to a tactical choice not rising to the level of ineffective assistance of counsel[,]" for "[a] failure to request charges on all possible lesser included offenses may be proper trial strategy." Colon v. Smith, 723 F.Supp. 1003, 1008 (S.D.N.Y. 1989) (citing Ford v. Smith, No. 77 Civ. 1021, slip op. (S.D.N.Y. Oct. 31, 1977); United States ex rel. Johnson v. Vincent, 507 F.2d 1309 (2d Cir. 1974), cert. denied, 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975)). Allowing the jury to deliberate on lesser included offenses "may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt." Colon, 723 F.Supp. at 1008.

Here, Petitioner's trial counsel vigorously pursued a defense that his client did not kill his mother and was intoxicated when he was apprehended by police. Counsel's failure to request a jury charge of lesser-included offenses was therefore not inappropriate where counsel sought an acquittal. See id. A defense which denies guilt is "a strategy that 'practically precludes a request for an instruction on a lesser included offense.'" Yu v. United States, No. 97 Civ. 2736, 1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997) (quoting Rios v. United States, No. CV-91-4384, 1992 WL 328931, at *6 (E.D.N.Y. Oct. 13, 1992)). The strategy of pursuing a completely exculpatory defense instead of a partially exculpatory defense is one of the many decisions made by trial counsel which are entitled to substantial deference. See United States v. Di Tommaso, 817 F.2d 201, 215 (2d Cir.1987). Accordingly, counsel's decision not to request lesser-included offenses in this case cannot be said to be objectively unreasonable.

### c.  Failure to Articulate Batson Challenge

Petitioner also complains that his attorney failed to properly articulate a Batson challenge during jury selection. He apparently adopts this argument from his appellate brief, wherein he argued that, should the Appellate Division find that trial counsel's failure to fully articulate the objection to the

removal of Juror No. 11 rendered the issue unpreserved, then that failure to properly preserve the <u>Batson</u> issue was attributable to counsel's ineffectiveness. <u>See</u> Pet'r Appellate Br. 38. Ultimately the Appellate Division did address Petitioner's <u>Batson</u> claim with respect to Juror No. 11, however, and found that the prosecutor offered a race-neutral explanation for his challenge. Accordingly, it appears that Petitioner's claim of ineffective assistance of counsel on this ground has been rendered moot by the appellate court's merits-based review of his <u>Batson</u> claim.

### d.  Deficient Representation at the Suppression Hearing

Lastly, Petitioner faults counsel for not arguing against the prosecution's position that the police seized Petitioner's red sweatshirt when it was in "plain view".[5]

Because this ineffective assistance claim is based upon a Fourth Amendment issue, Petitioner must show (1) that the Fourth Amendment claim is meritorious, and (2) that there is a reasonable probability that a different verdict would have resulted had the evidence in question been excluded. <u>See</u> <u>Mosby v.</u>

---

[5]          Under the plain view doctrine, police can make a warrantless seizure of contraband, evidence or instrumentalities of a crime where the items are in open view and the officer makes his observation from a lawful vantage point. <u>See</u> <u>Arizona v. Hicks</u>, 480 U.S. 321 (1987); <u>People v. Spinelli</u>, 35 N.Y.2d 77 (1974).

<u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006); <u>Kimmelman v.</u> <u>Morrison</u>, 477 U.S. 365, 375 (1986).

Prior to trial, Petitioner sought suppression of a red sweatshirt taken from him apartment at the time he was taken into custody because he had not voluntarily consented to its seizure nor had the police obtained a valid search warrant. While counsel focused his argument on the issue of Petitioner's consent, he also argued that there was ambiguity as to whether Petitioner had worn a red shirt and a red sweatshirt, and that in the absence of permission and exigent circumstances, the seizure of the shirt was improper. S.H. 41. Following the suppression hearing, the trial court upheld the seizure based on consent and also concluded that the police saw the red sweatshirt from a lawful vantage point. S.H. 46-47. Had counsel more aggressively argued against the prosecution's position that the item was in plain-view, there is no indication that the sweatshirt would have been suppressed as the court additionally found that Petitioner consented to the search and seizure by police. Accordingly, Petitioner cannot establish that his Fourth Amendment claim would be meritorious.

Moreover, Petitioner's confession, his mother's statement that Petitioner was the person who stabbed her, and testimony from the victim's neighbor clearly established that Petitioner

was the perpetrator. Accordingly, Petitioner cannot establish that, had the red sweatshirt been suppressed, the result of his trial would have been different.

In sum, petitioner does not establish that the Appellate Division's rejection of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of federal law.

### C. Amended Petition

#### 1. Ineffective Assistance of Trial Counsel

In his amended petition, Petitioner makes additional claims of ineffective assistance of trial counsel on the grounds that, *inter alia*, (1) counsel failed to interview witnesses in order to support Petitioner's intoxication defense; (2) counsel failed to conduct forensic testing of evidence found at the crime scene and on the murder weapon; and (3) counsel failed to argue that Petitioner's mental illness prevented him from forming the necessary intent required to convict a defendant of second degree murder. Am. Pet. 2-4. Petitioner's allegations have been raised for the first time in the amended petition and are therefore unexhausted. In any event, the claims lack merit.

Generally speaking, a Petitioner must allow the state to complete one full round of appellate review, which includes filing a petition with the state's highest court, before a claim

28

is said to be exhausted. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan, 526 U.S. at 844-45; accord Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000). In New York, a C.P.L. § 440.10 Motion to Vacate Judgment serves as collateral review where, among other things, the record does not permit direct appellate review of a particular issue. See People v. Dye, 911 N.Y.S.2d 538, 539-40 (4th Dept. 2010). Because there is no statutory time limit on a Motion to Vacate Judgment, one may be sought at any time after judgment. See C.P.L. § 440.10. Petitioner did not raise these specific claims of ineffective assistance of trial counsel on direct appeal, nor did he file a C.P.L. § 440.10 motion, leaving these claims completely unreviewed by a state court and unexhausted for habeas corpus purposes.

Notwithstanding Petitioner's failure to exhaust his claims in the state courts, these claims are "patently frivolous," and must be denied on the merits. See 28 U.S.C. § 2254 (b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Although the Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99

Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001);
Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150
(E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008
U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v.
Walker, 224 F. Supp.2d 544 (W.D.N.Y. 2002).

Petitioner's first ineffective assistance of trial counsel
claim in his amended petition alleges that counsel was
ineffective for having failed to interview four witnesses that
would have supported Petitioner's intoxication defense. Am. Pet.
3. This assertion is unpersuasive. Petitioner fails to identify
the four witnesses and does not explain how those witnesses would
have aided in establishing his intoxication defense. Moreover, it
is unclear how another witness' testimony would create the effect
Petitioner seeks when his own testimony was too thin to negate
the element of intent. [6] See, e.g., People v. Murphy 68 A.D.3d
1730 (4th Dept. 2009) (where there is a "paucity of evidence"
that defendant exhibited signs of intoxication, defense's failure
to pursue an intoxication defense does not result in ineffective
representation (internal quotes omitted)).

Similarly, petitioner's contention that counsel failed to
assert a "mental illness" argument, see Am. Pet. 4, is without

---

[6]     Petitioner testified that he had consumed two 40-ounce beers over
a two to three-hour period before visiting with his mother. Although he was
"somewhat inebriated" when he left his mother's home, he stated that he was
not "falling down on the street drunk." T.T. 772, 775, 822.

merit. This contention is unsupported by the record and it is not unreasonable that defense counsel choose not to pursue a mental illness defense given the evidence available to him at the time. See Strickland, 466 U.S. 668, 689-90.

Although testimony at trial establishes the Petitioner was on medication at the time of his arrest, further testimony supports that Petitioner was lucid and cohesive throughout the penal process. See, e.g., T.T. 607, 627. Indeed, a competency hearing was never sought by defense counsel or directed by the trial court suggesting that Petitioner's behavior gave no indication that Petitioner was suffering from mental illness or defect. In fact, the only time throughout the course of trial proceedings in which mental health was brought to the court's attention was during the Huntley hearing where defense counsel sought mental health records for the purpose of seeking a favorable plea, not a "psychiatric defense." H.H. 26-28.

It is also worth noting that the Appellate Division rejected Petitioner's contention in his *pro se* supplemental brief on appeal that the court abused its discretion in failing, *sua sponte*, to order a competency hearing, finding that the record was absent of any indication that Petitioner was unable to understand trial proceedings or assist in his own defense. Johnson, 43 A.D.3d at 1422.

In sum, it is plausible and well within the guidelines laid out in Strickland that defense counsel determined that a psychiatric defense would be either implausible, unlikely to succeed, or deleterious of other potential defenses given his interactions with Petitioner, and his investigation of the mental health records he received after the Huntley hearing. See DeLuca v. Lord, 77 F.3d 578, 588 n.3 (2d Cir. 1996) ("A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision."). Accordingly, petitioner does not establish counsel's ineffectiveness on this ground.

Petitioner next avers that trial counsel was ineffective failing to perform forensic DNA testing on the murder weapon and the crime scene, alleging that evidence would have revealed that he was not Brown's assailant. Am. Pet. 3-4. This claim is specious given overwhelming evidence to the contrary. In fact, the contention that DNA evidence on the knife would have demonstrated that someone other than the Petitioner was Brown's assailant was presented to the Appellate Division as part of Petitioner's *pro se* supplemental brief. Because this claim was considered on the merits and rejected by the Appellate Division, trial counsel could not have been ineffective for failing to

assert this claim at the trial level. <u>See</u> <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d. Cir. 1999) (failure to make a meritless argument does not amount to ineffective assistance of counsel).

Petitioner's unexhausted claims of ineffective assistance of trial counsel must therefore be dismissed as patently frivolous.

## 2. Ineffective Assistance of Appellate Counsel

Petitioner claims appellate counsel's representation was deficient on the basis that he failed to challenge aforementioned errors made by trial counsel on appeal. These errors have not been raised in any state court proceeding and are therefore unexhausted.[7] In any event, the Court considers them to be patently frivolous. After reviewing and rejecting Petitioner's underlying contentions regarding his trial counsel's ineffectiveness on the merits, <u>see supra</u> Points III.B.4., III.C.1., appellate counsel cannot be faulted for failing to raise a meritless ineffective trial counsel argument on appeal. Petitioner thus does not establish constitutionally deficient assistance. <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d at 95, 99 (2d Cir. 2001) ("[t]he failure to include a meritless argument does not

---

[7]      Even if the Court were to consider Petitioner's contentions as they were articulated in his *coram nobis* applications, such claims would nonetheless be unexhausted. Petitioner never sought to appeal the denial of his *coram nobis* to the New York Court of Appeals. <u>Daye</u>, 696 F.2d at 190. Because Petitioner's time to appeal has expired, those claims are deemed exhausted but procedurally barred.  <u>See</u> <u>Hawkins v. Lape</u>, 2009 WL 890549 (E.D.N.Y. 2009). Petitioner has shown no cause for the default and no actual prejudice.

fall outside the wide range of professionally competent assistance to which [a][p]etitioner [i]s entitled.").

## IV. Conclusion

For the reasons stated above, Jerry L. Johnson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because Petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     February 3, 2011
           Rochester, New York